IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STANLEY D. PARTMAN<br>    a/k/a Goat | CR. No. 3:11-2063-JFA-10<br><br>**ORDER** |

This case was calendared for trial beginning on Monday, November 26, 2012. At a pretrial conference held five days earlier, November 21, 2012, the defendant raised the issue of his competency to stand trial. Thus began yet another episode of what appears to be a discernible trend in this Court: defendants who raise competency to stand trial on the very eve of trial. When such situations arise, this Court endeavors to have the defendant examined by a skilled medical professional.[1]

The defendant's competency had been raised once previously during the pendency of this litigation. Specifically, in an attempt at a guilty plea conducted on July 12, 2012, the defendant broke down and became emotional, prompting this Court to have the defendant examined by Dr. Thomas Martin, a Columbia, South Carolina psychiatrist. *See* ECF Nos. 674, 676. Pursuant to the Court's order, Dr. Martin examined the defendant and inquired into his medical history. Dr. Martin determined that the defendant is competent to stand trial and subsequently rendered a written report dated August 27, 2012 to that effect.[2]

Therefore, when the competency issue arose for a second time on November 21, 2012, the Court contacted Dr. Martin. Unfortunately, Dr. Martin was not available for a second

---

[1] *See United States v. Basham*, Cr. No. 4:02-992-JFA (D.S.C.) (competency examination conducted by Dr. Martin on the first day of a 28 U.S.C. § 2255 evidentiary hearing and testimony by Dr. Martin on that defendant's competency to go forward with the hearing).

[2] This report has been filed under seal with the Clerk of Court.

examination of the defendant because of a pre-arranged commitment to testify in a criminal trial in New York City. Thus, Dr. Martin's unavailability presented the Court with a quandary. The jury had been selected some four weeks earlier, the case had been pending for over fifteen months, the trial term had been continued three times, and the government had expended considerable resources to prepare for trial.

Consequently, the Court directed the Clerk of Court to instruct the jury to report on the afternoon of Monday, November 26, 2012, thereby giving this Court a full morning during which to explore the competency issue. At the commencement of a competency hearing that morning, the Court indicated that it wished to consult with the defendant on an *ex parte* basis. Accordingly, the prosecution and all law enforcement personnel left the courtroom while the Court conducted a colloquy with the defendant and his attorney. After the colloquy ended, the prosecution and law enforcement personnel returned to the courtroom and the Court made additional inquiries of the defendant. The Court also re-reviewed Dr. Martin's written report. At the conclusion of the hearing, the Court announced that it had determined that the defendant was competent to stand trial and the trial commenced that afternoon. This order shall serve to memorialize the Court's ruling on the defendant's competency.

At the outset, it should be noted that this case has a troublesome history. The defendant has, on more than one occasion, attempted to offer a guilty plea. On the first such occasion, the defendant became emotional, prompting the Court to order the psychiatric examination referred above. On the second attempt to plead guilty, the defendant appeared to be suggesting to the Court that the Court should intervene on his behalf and recommend that the prosecution offer the defendant a more favorable plea agreement. The defendant expressed similar sentiments at the

first guilty plea attempt.  Additionally, this Court has previously determined that the defendant lied to law enforcement officials when he was interviewed pursuant to his proffer agreement.

Earlier in the litigation, the defendant filed a motion asking the Court to replace his Court-appointed attorney, William Watkins.  *See* ECF No. 420.  Following a hearing, the Court agreed that it would be in the defendant's best interest to appoint new counsel.  It is rare for this Court to appoint new counsel to an indigent defendant, but the Court was convinced that in this case a substitution of counsel was necessary.  The Court accordingly discharged Mr. Watkins from the case and appointed Columbia attorney John O'Leary as new counsel.

Also, on several occasions since Mr. O'Leary's appointment, the defendant has expressed his displeasure with Mr. O'Leary's representation.  When pressed for specifics of the alleged deficiencies of his new counsel, the defendant gave the Court evasive or inadequate responses.  For example, on one occasion, the defendant suggested that Mr. O'Leary had not subpoenaed the witnesses that he desired to have brought in to testify in his defense.  When this Court pressed him as to the identity of these witnesses and what they might offer to the case, the defendant simply asserted that all three of his witnesses were his relatives, but that he did not have their addresses.  When the United States Attorney prosecuting the case then suggested that the government would subpoena defendant's witnesses if current addresses were located, the defendant abruptly changed course and indicated that he would not say anything further about his witnesses.

Importantly, and as suggested above, this Court has had numerous opportunities to interact with the defendant, question him on various subjects, and observe his demeanor and behavior in the courtroom.  For example, at the competency hearing on November 26, 2012, the defendant told the Court that his "nerves" were affecting his ability to participate in the trial and

that he frequently heard "voices" advising him as to particular courses of action he should take. Regarding the latter statement, the defendant mentioned that had experienced an unhappy, abusive childhood, and that his brother had been killed. According to the defendant, one voice he hears is that of his deceased brother. The defendant's deceased brother has allegedly communicated with him periodically throughout the course of this litigation.

All of these factors were made known to Dr. Martin and included in his psychiatric evaluation that found the defendant competent to stand trial. This Court's interaction with the defendant over the past thirteen months leads this Court to the same conclusion. At each juncture, the defendant was able to articulate his desires to the Court, and he appeared quite capable of understanding the Court's questions as well as the discussions concerning procedures affecting the trial.

Additionally, as noted previously in this order, the guilty plea process broke down on two occasions because it appeared to this Court that the defendant was seeking the Court's intervention in achieving a more favorable plea agreement from the government. At the motion to appoint new counsel, the defendant was able to articulate his dissatisfaction with his first attorney. Moreover, as noted above, this Court has already made a factual determination that the defendant has lied to government authorities in connection with this case. The defendant has also been less than candid with this Court on several occasions, such as the episode where he first complained that his attorney was not subpoenaing all the necessary witnesses. During the second discussion about the failure to produce necessary defense witnesses, it was revealed to the Court that one of the relative–witnesses was actually seated in the courtroom at the time.

Finally, the Court observed the defendant confer with his attorney on a number of occasions during his trial, apparently regarding trial strategy. In some cases, the defendant

4

initiated these conferences and in others his attorney did. In any event, the defendant appeared to be suggesting questions, strategies, and/or potential areas of inquiry for cross-examination. The defendant also appeared to supply his attorney information which formed the basis of objections to testimony from witnesses for the prosecution, such as where the defendant's attorney objected to testimony on the basis of the privilege for confidential marital communications.

Based upon the totality of the circumstances in this case, including Dr. Martin's forensic report and this Court's careful scrutiny of the defendant's faculties and abilities, the Court has little difficulty in concluding that the defendant is competent to stand trial. The Court specifically finds that the defendant is capable of understanding the nature of the charges against him, that he is capable of assisting his attorney in his own defense, and that he had these capabilities during the trial conducted the week of November 26, 2012.

IT IS SO ORDERED.

*/s/ Joseph F. Anderson, Jr.*

November 28, 2012                                     Joseph F. Anderson, Jr.
Columbia, South Carolina                              United States District Judge