IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No.: 3:11-2063-JFA-10 |
| Plaintiff-Respondent. | |
| v. | **ORDER** |
| STANLEY D. PARTMAN, <br> *a/k/a Goat*, | |
| Defendant-Petitioner. | |

## I.    INTRODUCTION

Defendant Stanley D. Partman ("Partman" or "Petitioner") has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255"). (ECF No. 1073).

Partman was charged in five counts. In Count 1, he was charged with conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. (ECF No. 914 p. 1). In Count 2, Partman was charged with possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (ECF No. 914 p. 1). In Count 37, Partman was charged with using a telephone to distribute and possess with intent to distribute cocaine and cocaine base, aiding and abetting, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. (ECF No. 914 p. 2). In Count 70, he was charged with possession of a firearm in furtherance of a drug

trafficking crime, in violation of 18 U.S.C. § 924(c). (ECF No. 914 p. 2). In Count 71, he was charged with using a telephone to distribute and possess with intent to distribute cocaine and cocaine base, and aiding and abetting, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. (ECF No. 914 p. 2). A verdict of guilty as to Counts 1, 2, 3, 70, and 71 of the Amended Second Superseding Indictment (ECF No. 776) was returned on November 29, 2012. (ECF No. 914 p. 2).

On October 18, 2012, this Court held jury selection for Partman's case. *See* (ECF Nos. 711–13). On November 15, Partman filed a motion to disqualify the jury panel because he entered the court in pants the detention center had issued to him.[1] (ECF No. 742). On November 16, the Government responded in opposition. (ECF No. 747). On November 26, 2012, this Court held an evidentiary hearing where it questioned each juror individually to determine whether any juror had noticed the clothing Partman was wearing at jury selection. *See* (ECF No. 779 p. 3). Of the fourteen (14) jurors questioned, only two (2) recalled that Partman had worn a "jumpsuit" or "correction-issued pants," and the Court excused these two jurors. (ECF No. 779 p. 3). On November 28, 2012, this Court denied Partman's Motion. (ECF No. 779). Thereafter, Partman proceeded to trial and was convicted on all Counts.

On March 18, 2013, the United States Probation Office issued a final presentence investigation report ("PSR") as to Partman. (ECF No. 914). The PSR noted that this Court could impose a "2-level enhancement for obstruction of justice based upon the

---

[1] That same day, Partman filed a motion to exclude lab reports (ECF No. 741) and a motion to exclude transcripts (ECF No. 740).

defendant feigning incompetence, as well as his numerous attempts to disrupt trial proceedings." (ECF No. 914 p. 27). The PSR stated that Partman's total offense level was 42; his criminal history was Category II; and his probation eligibility was "Prohibited." (ECF No. 914-1 p. 1).

The Court sentenced Partman to a total term of 396 months. He received 336 months for Count 1; he received 240 months for Count 2; he received 48 months each as to Counts 37 and 71, to run concurrently; and he received 60 months as to Count 70, to run consecutively to all other terms. (ECF No. 905 p. 2). Judgment was entered on March 15, 2013. (ECF No. 905). Partman subsequently filed a notice of appeal (ECF No. 908) on the same day. Partman appealed to the Fourth Circuit Court of Appeals. *See United States v. Partman*, 568 F. App'x 205 (4th Cir. 2014). On appeal, Partman contended that "a new trial was required because his appearance in prison-issued clothing prejudiced the jury" and that acquittal was required because "there was insufficient evidence to support his 18 U.S.C. § 924(c) conviction." *Id.* at 208. Partman also argued that "the sentencing enhancement was unwarranted because his noncompliance and in-court disruptions did not rise to the level of obstruction of justice." *Id.* The Fourth Circuit, however, affirmed all of this Court's rulings. *Id.* at 213–14. Thereafter, Partman filed a petition for writ of certiorari, and the Supreme Court of the United States denied the Petition on November 17, 2014. *Partman v. United States*, 135 S.Ct. 690 (2014).

On November 9, 2015, Partman filed the current motion to vacate, pursuant to 28 U.S.C. § 2255. On May 31, 2016, Partman filed a supplemental §2255 motion (ECF No. 1141), and he filed another supplemental motion (ECF No. 1157) on August 1, 2016.

## II. PROCEDURAL HISTORY

Partman filed his original § 2255 motion on November 9, 2015. (ECF No. 1073). On December 14, 2015, the Government filed a motion for summary judgment. (ECF No. 1092). Two days later, the Court sent Partman a *Roseboro* order. (ECF No. 1093). On January 25, 2016, Partman filed a response in opposition to the Government's Motion. (ECF No. 1107). That same day, Partman filed a motion to amend his original § 2255 motion. (ECF No. 1108). The Court granted Partman's Motion to Amend, which gave Partman "21 days from [the] order to file a new § 2255 petition containing an amendment to add an allegation." (ECF No. 1139).

On May 31, 2016, Partman filed his supplemental § 2255 petition. (ECF No. 1141). On June 29, 2016, Partman filed another motion, this time a motion for leave to file a § 2255 action raising a *Johnson* issue. (ECF No. 1151). On July 8, 2016, the Court issued an order granting Partman's Motion. (ECF No. 1152). The Order stated the following: "[a]ny supplements to the *Johnson* amendment must be filed within 21 days of this order." *Id.* The Order also stated that "[n]o further amendments may be made to the defendant's claims filed with his original § 2255 petition." *Id.*

On August 1, 2016, Partman filed his second supplemental § 2255 petition. (ECF No. 1157). On September 20, 2016, the Government responded in opposition (ECF No. 1167) and filed another motion for summary judgment (ECF No. 1168). The Court sent Partman another *Roseboro* order on January 10, 2017. (ECF No. 1180). On February 8,

2017, Partman responded in opposition to the Government's Motion for Summary Judgment. (ECF No. 1182).

For the reasons below, the Petitioner's § 2255 Motion is denied, and the Government's Motion for Summary Judgement is granted.

## III. LEGAL STANDARD

### A. 28 U.S.C. § 2255

Prisoners in federal custody may attack the validity of their sentences pursuant to 28 U.S.C. § 2255. In order to move the court to vacate, set aside, or correct a sentence under § 2255, a defendant/petitioner must prove that one of the following occurred: (1) a sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

### B. SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant has the burden of proving that summary judgment is appropriate. Once the movant makes the showing, however, the opposing party must

respond to the Motion with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). In deciding a motion for summary judgment, the facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id*. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986).

"[O]nce the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See id.* Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV.    DISCUSSION

### A.    PARTMAN'S ORIGINAL § 2255 PETITION

### 1.    *Claim of Ineffective Assistance of Counsel*

Partman contends that he received ineffective assistance of counsel. (ECF No. 1073-1 p. 1). The Sixth Amendment right to counsel is "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To successfully challenge a sentence on the basis of ineffective assistance of counsel, the Defendant must demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that he was prejudiced by his counsel's deficient performance. *See Sharpe v. Bell*, 593 F.3d 372, 382 (4th Cir. 2010); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A reviewing court must be highly deferential in scrutinizing counsel's performance and must filter from its analysis the distorting effects of hindsight. *Id.* at 688–89.

In addition to showing ineffective representation, the Defendant must also show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v.*

*Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland*, 466 U.S. at 693).

Defendant alleges six (6) different grounds for his claim of ineffective assistance of counsel. *See* (ECF No. 1073-1). Each is addressed below, and each is without merit.

### a. Partman's Clothing at Jury Selection

Partman alleges that he suffered prejudice because the jurors saw him dressed in detention-center pants at jury selection. Specifically, he states that "[c]ounsel's failure to object to the obvious prison attire and request a change of clothes fell below a professional standard of reasonableness." (ECF No. 1073-1 p. 3).

"Courts have, with few exceptions, determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system." *Estelle v. Williams*, 425 U.S. 501, 505 (1976). Thus, in some cases, "[t]he physical appearance of a defendant while in the presence of the jury may adversely affect the presumption of innocence." *Chavez v. Cockrell*, 310 F.3d 805, 808 (5th Cir. 2002) (citing *Estelle*, 425 U.S. at 504).

A defendant, however, does not suffer actual prejudice simply because jurors see him or her in prison attire. *See United States v. Jackson*, 423 F. App'x 329, 331 (4th Cir. 2011) (finding that a defendant was not prejudiced when members of the jury observed defendant wearing a "jail jumpsuit and shackles"); *United States v. Lattner*, 385 F.3d 947, 959 (6th Cir. 2004) (finding that defendant was not prejudiced where jurors briefly observed defendant in handcuffs); *United States v. Halliburton*, 870 F.2d 557 (9th Cir. 1989) (finding no prejudice where jurors briefly and inadvertently observed defendant in

handcuffs outside the courtroom). "There must be a showing . . . that the defendant suffered actual prejudice as a result of such knowledge." *United States v. Leon*, 33 F. App'x 690, 691 (4th Cir. 2002).

"Actual prejudice is shown if the defendant can establish an unreliable or fundamentally unfair outcome to his proceeding." *Leon*, 33 F. App'x at 691 (citing *United States v. Squillacote*, 221 F.3d 542, 575 (4th Cir. 2000), *cert. denied*, 532 U.S. 971 (2001)). The "most certain method" for determining whether actual prejudice resulted from jurors' observations is to "conduct a voir dire" of the jurors. *See Halliburton*, 870 F.2d at 561; *Chavez v. Cockrell*, 310 F.3d 805, 809 (5th Cir. 2002) (finding no prejudice where defendant was startled by the inadvertent activation of his stun belt in the presence of the jury and where the trial judge subsequently interviewed each individual juror and determined jurors could remain fair and impartial); *United States v. Pina*, 844 F.2d 1, 8 (1st Cir. 1988) (finding jurors' observation of defendant wearing handcuffs did not result in actual prejudice where judge subsequently questioned jurors and jurors insisted they could remain impartial). If a juror would not "recognize the clothing as issued by a jail," then there is no prejudice. *See United States v. Leonesio*, No. 88-1276, 1990 WL 95397, at *2 (9th Cir. Jul. 11, 1990) (citing *Jeffers v. Ricketts*, 832 F.2d 476, 481 (9th Cir. 1987)).

Here, Partman appeared for jury selection in an untucked button-down shirt and red pants; the red pants were issued by a detention facility.[2] (ECF No. 779). Partman's pants were not exposed to the jury. *Id.* While Partman was seated at the counsel's table in the courtroom, "members of the jury panel would not have been able to observe [Partman's] lower body and red pants." *Id.* at 2. Although Partman once attempted to stand, he was quickly seated. *Id.* at 3.

In the Court's Order denying Partman's attempt to disqualify the jury, the Court stated the following:

> On the day of trial, and before trial began, this Court brought each juror (including both alternates) separately into the courtroom. This Court then asked each juror whether he or she remembered anything about [Partman's] attire on the day in question. Of the fourteen jurors questioned, only two recalled that [Partman] wore a "jumpsuit" or "correction-issued pants." The Court excused these jurors from service as a result. Notably, nine jurors had no recollection of [Partman's] attire that day, two remembered his shirt, and one asked whether [Partman] was wearing "something orange." Thus, in other words, the twelve jurors which served in this case did not recall that [Partman] was wearing red, prison-issued pants. The Court finds it unlikely that these twelve jurors were even aware of [Partman's] custodial status, and there is consequently no evidence that [Partman's] presumption of innocence was impaired.

(ECF No. 779 p. 3).

Partman clearly suffered no actual prejudice due to his attire at jury selection. The jurors could only see his pants briefly, if at all. When the Judge asked the jurors about the clothes Partman wore that day at jury selection, only two were able to recall any details about Partman's attire. Both of those jurors

---

[2] Counsel, at his own expense, had purchased clothing for Partman based on the "measurements and sizes supplied by Mr. Partman." (ECF No. 1092-2 p. 1). However, Partman refused to wear the pants counsel purchased for him, alleging that his "weight change[ed] during his incarceration." (ECF No. 1092-2 p. 1).

were subsequently excused. Therefore, Partman suffered no prejudice, and this argument is without merit.

**b.**  **Alleged Failure to Investigate a Defense, Call Witnesses for the Defense, or Impeach Government Witnesses throughout the Underlying Trial**

Partman alleges that his counsel was ineffective because counsel failed to investigate a defense, call witnesses, or impeach government witnesses. However, the Eleventh Circuit Court of Appeals has clarified that the test for ineffective assistance of counsel is a high standard:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992) (internal quotations omitted) (citing *Strickland*, 446 U.S. at 688–89). "As numerous courts have noted, 'mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.'" *Wagner v. United States*, 377 F. Supp. 2d 505, 509 (D.S.C. 2005) (citing *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998)); *see also United States v. Collins*, No. 95-6386, 1995 WL 606786, at *1 (4th Cir. Oct. 16, 1995) (denying relief on defendant's claims of

ineffective assistance where defendant failed to show he was prejudiced by counsel's actions and only asserted conclusory allegations).

Here, Partman asserted no justifications for his claims; he merely made conclusory allegations. *See* (ECF No. 1073-1 p. 4–5). He did not provide names of helpful witnesses,[3] nor did he give his attorney any evidence or information that the witnesses could have provided to positively impact the case. Therefore, this argument is completely without merit.

### c.     Guideline Range Calculations

Next, Partman alleges ineffective assistance because he "received a two-level reckless endangerment enhancement based on the unsubstantiated allegation that he tried to run other drivers off the road while [he] was driving his vehicle." (ECF No. 1073-1 p. 5). Partman's attorney, however, filed objections to the PSR. (ECF No. 888-4). Counsel also objected to the enhancements at sentencing. (ECF No. 943 p. 34–37).

The Fourth Circuit has held that "[a] two-level enhancement is required 'if the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer.'" *United States v. Weaver*, Nos. 10-4430, 10-4438, 2011 WL 1575629, at *1 (4th Cir. Apr. 27, 2011) (Citing USSG § 3C1.2). "Acts are considered reckless when the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to

---

[3] Partman provided his attorney with a deficient list of potential witnesses, including Partman's deceased brother, other deceased people, and a direct family member who would have provided information "negative" to Partman's case. (ECF No. 1092-2 p. 2–3).

disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." *Id.* (citing *United States v. Carter*, 601 F.3d 252, 254 (4th Cir. 2010)).

Here, Partman did not stop when officers attempted to pull him over. Instead, he increased his speed, drove through a stop sign, and crashed into a privacy fence. Throughout the chase, there were civilians on the road. (ECF No. 900 p. 8). When he was apprehended, he had cocaine all over his mouth. *Id.* In fact, he had ingested so much of it that he went into a coma. *Id.* This clearly constitutes reckless behavior, and Partman clearly created a substantial risk of death or serious injury. *Id.*

Partman necessarily received a two-level sentence enhancement due to his own fault, not his lawyer's. Therefore, this argument is clearly without merit.

### d.     Statements from Partman's Plea Agreement

Partman alleges that his counsel was ineffective for the following:

> During the underlying trial, the Government introduced proffered statements adverse to the Defendant, contrary to the basic rules applicable to proffer settlements made during the course of plea negotiations. Counsel failed to lodge any objection or take any other action aimed at precluding the introduction of this prejudicial and improper evidence.

(ECF No. 1073-1 p. 7).

As Partman notes, the basic rule is that statements made by a defendant during plea negotiations are inadmissible in the defendant's subsequent trial. *See* Fed.R.Crim.P. 11(f); Fed.R.Evid. 410(4). However, the Supreme Court of the United States has held that "absent some affirmative indication that the agreement

was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995); *see also United States v. Gillion*, 704 F.3d. 284, 292 (4th Cir. 2012) ("[A] proffer agreement operates like a contract."); *United States v. Daniels*, No. 05-5016, 2006 WL 1888823, at *1 (4th Cir. Jul 10, 2006) ("A proffer agreement operates like a contract; accordingly, to discern whether [defendant] breached the agreement, we must examine its express terms."); *United States v. Cobblah*, 118 F.3d 549, 551 (7th Cir. 1997) ("As a contract, a proffer agreement must be enforced according to its terms.").

In *Daniels*, the Fourth Circuit reviewed a defendant's challenge of the district court's reliance on statements he gave during a plea agreement to enhance defendant's sentence. *Daniels*, 2006 WL 1888823, at *1. The defendant entered into a plea agreement whereby he agreed "to be fully truthful and forthright" and that he would "submit to a polygraph examination." *Id.* Moreover, the agreement provided that, if defendant failed the polygraph exam "to the satisfaction of the Government," such failure would constitute a breach of the agreement, "negating the Government's obligations." *Id.* Namely, the Government would be authorized to use the agreement "for any purpose any and all statements made." *Id.* The Fourth Circuit held that the defendant "clearly breach[ed] the terms of the agreement," and thus the district court permissibly enhanced defendant's sentence "based on statements he made during the proffer interview." *Id.*

Here, Partman's assertions are very similar to the assertions of the defendant in *Daniels*. Partman's proffer agreement provides the following:

> Client's failure to be fully truthful and forthright at any stage will, at the sole election to the Government, cause the obligations of the Government within this Agreement to become null and void. **Further, it is expressly agreed that if the obligations of the Government within this Agreement become null and void due to the lack of truthfulness on Client's part: . . . (2) the Government may use for any purpose any and all statements made and other information provided by Client in the prosecution of Client on any charges, including perjury.**

(ECF No. 1092-3 p. 1, 2) (emphasis in original). Regarding the polygraph examination, the Agreement provides the following:

> Client agrees to submit to polygraph examination(s) by any qualified polygraph examiner should Client be requested to do so. **Failure to pass to the satisfaction of the Government any polygraph examination administered pursuant to this Agreement constitutes a breach of the Agreement, and the Government may use for any purpose any statements made and other information provided by Client in the prosecution of Client on any charges.**

(ECF No. 1092-3 p. 2) (emphasis in original).

Pursuant to the Agreement, Partman submitted to a polygraph examination and failed it. Partman's counsel did not "allow" Partman's statements to be used against him, the proffer agreement itself allowed the Government to use the statements if Partman breached the terms of the Agreement. Because Partman breached the terms of the agreement, the Government could use his statements "for any purpose." *See id.* It was Partman's deception and not counsel's error that resulted in the Government's use of the statements. Therefore, Partman's argument is without merit.

### e.    Alleged Mental Illness

Partman claims that he has a mental illness and thus he should have had a mental health expert to help prepare his defense. Specifically, Partman claims that he "sustained questionable brain injury" when he was in a traffic accident prior to being indicted in this matter. (ECF No. 1073-1 p. 9). He claims that he was "in a coma for approximately ten (10) days." *Id.* In his original Petition (ECF No. 1073), Partman provides no support for this assertion. However, in a subsequent Motion to Amend (ECF No. 1183), Partman makes the same argument, relying heavily on two cases: *Ake v. Oklahoma*, 470 U.S. 68 (1985) and *McWilliams v. Dunn*, 137 S.Ct. 1790 (2017).

In *Ake v. Oklahoma*, the Supreme Court of the United States held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Ake*, 470 U.S. at 74. In that case, the petitioner's "behavior was so bizarre that the trial judge, *sua sponte*, ordered him to be examined by a psychiatrist." 470 U.S. at 68. "[T]he examining psychiatrist found petitioner to be incompetent to stand trial and suggested that he be committed." *Id.* at 68. Six weeks later, however, petitioner was found to be competent and was administered antipsychotic drugs. *Id.* Thereafter, after proceedings were resumed, petitioner's attorney "informed the court that he would raise an insanity defense, and requested a psychiatric evaluation at state expense to determine petitioner's mental state at the time of the offense, claiming that he was entitled to such

an evaluation by the Federal Constitution." *Id.* The Oklahoma Court of Criminal Appeals denied the motion for evaluation, and petitioner was subsequently sentenced to death. *Id.* The Supreme Court of the United States granted certiorari and reversed the Oklahoma Court of Criminal Appeals' decision. *Id.* at 74.

Similarly, in *McWilliams v. Dunn*, petitioner in that case was charged with rape and murder. 137 S.Ct at 1791. Petitioner's counsel requested a "psychiatric evaluation of [petitioner]." *Id.*

> The court granted the motion and the State convened a commission, which concluded that [petitioner] was competent to stand trial and had not been suffering from mental illness at the time of the alleged offense. A jury convicted [petitioner] of capital murder and recommended a death sentence. Later, while the parties awaited [petitioner's] judicial sentencing hearing, [petitioner's] counsel asked for neurological and neuropsychological testing of [petitioner]. The court agreed and [petitioner] was examined by Dr. Goff. Dr. Goff filed a report two days before the judicial sentencing hearing. He concluded that [petitioner] was likely exaggerating his symptoms, but nonetheless appeared to have some *genuine neuropsychological problems*. Just before the hearing, counsel also received updated records from the commission's evaluation and previously subpoenaed mental health records from the Alabama Department of Corrections. At the hearing, defense counsel requested a continuance in order to evaluate all the new material, and asked for the assistance of someone with expertise in psychological matters to review the findings. The trial court denied defense counsel's requests. At the conclusion of the hearing, the court sentenced [petitioner] to death.

*Id.* (emphasis added). The Supreme Court of the United States granted certiorari and reversed the underlying court's decision, holding that the state failed to meet its obligations under *Ake v. Oklahoma* to provide defendant with access to mental health expert to assist in evaluation, preparation, and presentation of the defense. *McWilliams*, 137 S.Ct. at 1800–01.

In this case, Partman was never found to have a psychological disorder. Dr, Thomas V. Martin, M.D., conducted an examination of Partman on August 23, 2012 and found that Partman had "no major mental illness and that he was Competent to Stand Trial." (ECF No. 1183-1 p. 1). On October 3, 2012, Dr. Martin stated in his report that Partman "acted strangely" at Federal Court, which "led to the request for a follow-up psychiatric evaluation." *Id.* After reviewing "more than six hours of recorded telephone conversations made by Mr. Partman," Dr. Martin determined that Partman was "an individual free of disorganized thought"; "he was of coherent mind"; "he demonstrated interest in his family's status"; and he "displayed anger with the progress of his Federal legal case." *Id.* at 2. Dr. Martin further stated the following:

> [Partman] was consistently articulate, was able to discuss strategy in his legal case, and insisted on more visits and mail from his family and friends. At times, Mr. Partman was angry and argumentative with his family when not getting the attention he wanted from them. At no time did Mr. Partman sound as if he suffered from a major thought, mood, or cognitive disorder.

*Id.*

On January 25, 2013, Dr. Martin agreed to meet with Partman "privately behind protective glass at the LCDC." *Id.* Dr. Martin stated, "[w]hen Mr. Partman was brought to the examination, his facial expression with me was one of recognition." *Id.* Partman threw a tantrum, and Dr. Martin stated that Partman sounded "coherent and articulate." *Id.* Partman continued his tantrum and refused to cooperate. *Id.* Because Partman was protesting, Dr. Martin instead met with "the CO about Mr. Partman's behavior and condition on the 'C' Pod at LCDC." *Id.* The CO discussed Partman's behavior with Dr. Martin. *Id.* Thereafter, Dr. Martin concluded the following:

It is still therefore this Examiner's conclusion with a reasonable degree of medical and psychiatric certainty, that Mr. Partman does not suffer from a major mental illness or cognitive disorder that would preclude his competency to cooperate with his attorney and participate in sentencing proceedings in Federal Court. His repeated acting-out and somewhat bizarre behaviors are fueled by his sociopathic character which is not uncommon in defendants facing long prison sentences. His behavior could be better managed if Mr. Partman agreed to a short course of psychotropic medication . . . to address his anger dyscontrol and uneasiness in Federal Court. Mr. Partman is able to properly and appropriately participate with a sound mind in his pending Federal Court proceedings, if he chooses to do so.

*Id.*

Partman's alleged mental condition is not like the mental condition of the petitioners in either *Ake* or *Williams*. In both of those cases, there was a genuine psychological disorder at issue. However, here, Dr. Martin has clearly determined that Partman has no psychological disorders. *See* (ECF No. 1183-1). Thus, Partman is not at all like the petitioners in *Ake* or *Williams*. He has been evaluated multiple times, and every evaluation conducted says the same thing: he has no major mental illness, and he is competent to stand trial. Therefore, Partman's argument is without merit.

**f.    Expert Review of Audio**

Partman alleges that his counsel was ineffective because of counsel's alleged "failure to retain an expert to review and inspect" the audio recordings from Partman's wiretaps. (ECF No. 1073-1 p. 11). Partman claims that the recordings "were not sufficient to insure . . . accuracy" and that they "were not sufficiently authenticated." *Id.*

He also claims that "the audio recordings were defiant of Rule 901 of the Federal Rules of Evidence." *Id.*

Rule 901 of the Federal Rules of Evidence provides, in pertinent part:

**(a)** **In General.** To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

* * *

> **(5)** **Opinion About a Voice.** An opinion identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under circumstances that connect it with the alleged speaker.

> **(6)** **Evidence About a Telephone Conversation.** For a telephone conversation, evidence that a call was made to the number assigned at the time to:

>> **(A)** a particular person, if circumstances, including self-identification, show that the person answering was the one called; or

>> **(B)** a particular business, if the call was made to a business and the call related to business reasonably transacted over the telephone.

Here, the Government satisfied the requirements of Rule 901. Agent Brian Jones testified that Partman's case was his fifth wiretap case. (ECF No. 939 p. 78). He also testified that he had tapped "at least 40 phones leading up to this investigation." *Id.* at 79. Jones then describes the process of wiretapping and the protocol he follows to gain permission to wiretap a phone, including the protocol he followed to gain permission to wiretap the phones of Partman and other members of the same drug conspiracy. *Id.* at 79–82. When asked how he

determined that Partman was one of the voices, Jones stated that "Partman referred to himself as Stanley" on one of the calls. *Id.* at 82. Moreover, Jones stated that "[he] also recognized Mr. Partman's voice." *Id.* Jones stated that he "didn't do anything to alter [the conversations]." *Id.* at 83. Jones also stated that Donnay Rikard and Anthony Thompson initialed the wiretap disks, and they "assisted [Jones] in making some transcripts." *Id.* at 84. Another individual, Rondeal Woods, listened to the calls on Exhibits 14-17 and verified them with his initials. *Id.* at 84.

The wiretap was properly approved, and the voices in the wiretaps were properly authenticated. *See id.* at 79–84. Therefore, Partman's argument clearly fails because the Government satisfied the requirements for Rule 901 of the Federal Rules of Evidence.

## 2.      *Defendant's Fifth Amendment Rights were not Violated.*

Partman asserts that his Fifth Amendment rights were violated when statements he made during a plea agreement were used against him at trial. As discussed above, this argument is entirely without merit because Partman breached the terms of the plea agreement. *See* discussion *supra* Section IV.A.1.d.

## B.      PARTMAN'S FIRST SUPPLEMENTAL FILING

## 1.      *Ineffective Assistance of Counsel*

In his first supplemental filing (ECF No. 1141) ("First Supplemental 2255"), Partman again alleges ineffective assistance of counsel and that his Fifth Amendment rights were violated "when the Court allowed statements made by the Defendant during his proffer session" to be used against him. (ECF No. 1141 p. 1, 2). This argument is entirely without merit. *See* discussion *supra* Section IV.A.1.d.

Next, Partman asserts that "this Court turned a blind eye to Counsel Watkins' claim of duress and his supporting arguments in his motion to be relieved as counsel." (ECF No. 1141 p. 2, 3) (internal quotation marks omitted). Partman argues that counsel coerced him into signing the proffer agreement. (ECF No. 1141 p. 5). Partman, however, introduces no evidence or facts to support his claim.

On October 19, 2012, the Court held a hearing to determine whether Partman entered into the proffer agreement freely and voluntarily. *See* (ECF No. 754). Watkins testified that he explained the proffer agreement to Partman "in detail." (ECF No. 754 p. 44). Watkins also testified that "there was no argument" as to the 5K provision and that they "spent a lot of time discussing that the Government rarely gives it in Columbia." *Id.* at 45. Watkins also testified that he explained to Partman that "he wasn't going to get a bond." *Id.* Watkins testified that he did not coerce Partman in any way. *Id.* at 46. Watkins stated, "[Partman] is much larger, much younger and much stronger than I am, and there's no way I could force him to do anything." *Id.* Watkins also stated that he filed to be relieved because Partman was "trying to be very intimidating" and claimed that his "buddies" told him that he would have a good reason for an appeal if he said that his

22

lawyer promised him something. *Id.* at 49. Watkins stated that he informed Partman that

he couldn't put Partman on the stand if he knew Partman was lying. *Id.*

> After hearing testimony, the Court determined the following:

> On the record before me I find no basis for a determination that there was any type of overreaching, overbearing or improper conduct on the part of Mr. Watkins in terms of the Defendant signing the proffer agreement on a credibility issue. I resolve that issue adversely to the Defendant.

> *I accept Mr. Watkins' testimony over the testimony of the Defendant put before the Magistrate Judge.* The Defendant's suggestion that he was coerced is very short on specifics except for saying that Mr. Watkins was insistent and raised his voice and pounded his fist. But the proffer agreement is self-explanatory. It is written in terms that a layman can understand.

> The Defendant has not denied that it is his signature on the proffer agreement. And as I said, I have sharply conflicting testimony between Mr. Watkins and Mr. Partman about any coercion, and I resolve that credibility question adversely to the Defendant and accept Mr. Watkins' testimony.

> For that reason, *it is the finding of this Court that there was no improper, undue influence or other improper conduct directed toward the Defendant that caused him to sign the proffer agreement. I find that it was freely and voluntarily entered.*

(ECF No. 754 p. 59–60) (emphasis added).

> Partman claims that "the Hon. Joseph F. Anderson erred and abused his discretion

when he failed to consider Counsel Watkins' claim of being under duress by the

Defendant." (ECF No. 1141 p. 6). However, the Court clearly considered Watkins'

testimony, but the Court did not accept Partman's testimony over Watkins' testimony.

Therefore, Partman's contention—that he was coerced by his attorney into signing the

proffer agreement—has already been decided by this Court. *See* (ECF No. 754).

Partman's argument is thus without merit.

## 2.    *Use and Transactional Immunity*

Next, in the First Supplemental 2255, Partman claims that "Appellate Counsel should have raised the claim" that his rights were violated "because the 'Proffer Agreement' was based on 'use' immunity and not 'transactional' immunity—that protects the Defendant against prosecution for any crime resulting from the substance of his immunized testimony." (ECF No. 1141 p. 8) (emphasis omitted). Partman essentially argues that, had his counsel raised the issue of immunity, his conviction would have been reversed. *See id.* at 8–9. However, Partman clearly violated the terms of the plea agreement. *See* discussion *supra* Section IV.A.1.d. Under either a theory of use or transactional immunity, Partman's statements would have been admissible against him. *See United States v. Gerant*, 995 F.2d 505, 508 (4th Cir. 1993) ("An immunity agreement invokes the same constitutional due process concerns as a plea agreement."); *see also United States v. Cantu*, 185 F.3d 298, 302 (5th Cir. 1999) ("[N]onprosecution agreements are contractual in nature" and should be interpreted according to "general principles of contract law."). Therefore, Partman's argument is without merit.

## C.    PARTMAN'S SECOND SUPPLEMENTAL FILING

In Partman's second supplemental filing (ECF No. 1157), he asserts that the "conviction and enhancement sentence" is unlawful pursuant to *Johnson v. United States*, 135 S.Ct. 2551 (2015). In *Johnson*, the Supreme Court of the United States held that "imposing an increased sentence under the residual clause of the Armed Career Criminal

Act violates the Constitution's guarantee of due process." 135 S.Ct. at 2563. The residual clause to which the Court in *Johnson* was referring to is 18 U.S.C. § 924(e)(2)(B)(ii). This Clause relates to the Armed Career Criminal Act. Partman, however, was sentenced under 18 U.S.C. § 924(c)(1)(A) for possessing a firearm in furtherance of a drug trafficking crime. (ECF No. 914 p. 2). The holding in *Johnson* does not affect Partman's § 924(c) charge and is this not applicable to Partman's conviction and sentence. Therefore, Partman's argument is without merit.

## V.    CONCLUSION

For the reasons stated above, Government's Motions for Summary Judgment (ECF Nos. 1092 & 1167) are granted, and Defendant's § 2255 Petition is denied. Defendant's § 2255 Petition is dismissed with prejudice.

Furthermore, because the Defendant has failed to make "a substantial showing of the denial of a constitutional right," a certificate of appealability is denied.[4] 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

*Joseph F. Anderson, Jr*

February 9, 2018                                      Joseph F. Anderson, Jr.
Columbia, South Carolina                   United States District Judge

---

[4] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (West 2018). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).